## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

Joseph Burgess, III            :
8108 Old Georgetown Rd.     :
Bethesda, MD 20184        :
          Plaintiff      :     Case No.:
                           :
vs.                       :    **JURY TRIAL DEMANDED**
                           :
The John F. Kennedy Center for    :
the Performing Arts, Individually   :
2700 F. St., NW              :
Washington, DC 20566      :
          Defendant     :

and                       :

Karles C. Jackson, Sr., Individually, *in his*   :
*official capacity as an employee of The*    :
*John F. Kennedy Center for the Performing*   :
*Arts*                      :
2700 F. St., NW              :
Washington, DC 20566      :
          Defendant     :

## **COMPLAINT**

      Plaintiff Joseph Burgess, III, ("Burgess") by and through the undersigned counsel, brings

this cause of action against Defendants The John F. Kennedy Center for the Performing Arts

("Kennedy Center") and Karles C. Jackson, Sr. ("Jackson"), individually and in his official

capacity as an employee of The John F. Kennedy Center for the Performing Arts for Defamation,

Harassment, Negligent Infliction of Emotional Distress,  Hostile Work Environment and

Negligence, and against The John F. Kennedy Center for the Performing Arts, individually,

under the theory of  Respondent Superior, and alleges the following based upon information,

belief and investigation of his counsel:

1

**JURISDICTION**

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §1332 in

that the Plaintiff, Joseph Burgess III is a resident of the state of Maryland, the Defendant, The

John F. Kennedy Center for the Performing Arts is a "Federal agency" for purposes of the

Federal Tort Claim Act, 20 U.S.C. §76l(e)(2) and is located in the District of Columbia and the

Defendant, Karles C. Jackson, Sr. is an employee of The John F. Kennedy Center for the

Performing Arts and works in his official capacity in the District of Columbia. Additionally, the

amount in controversy is over $75,000.

2.     This Court has personal jurisdiction over Defendant Jackson because his alleged actions

against Plaintiff Burgess took place as part of his official duties as an employee of The John F.

Kennedy Center for the Performing Arts.

3.     This Court has personal jurisdiction over Defendant Kennedy Center through its

designation as a "Federal agency."

4.     The District of Columbia is the proper venue for this case because the actions of the

Defendants which injured the Plaintiff all took place within the District of Columbia. The

District of Columbia also has many substantial contacts with the litigation and the parties would

not be inconvenienced by conducting the trial here.

**STATEMENT OF THE CASE**

5.     The Plaintiff, Joseph Burgess, III ("Burgess") is an individually currently residing at

8108 Old Georgetown Rd. Bethesda, MD 20814.

6.    The Defendant, Karles C. Jackson, Sr. ("Jackson") is an individual who is employed by Defendant Kennedy Center and is alleged to have committed all of his actions against the Plaintiff as part of his official duties at 2700 F. St., NW Washington, D.C. 20566.

7.    The Defendant The John F. Kennedy Center for the Performing Arts ("Kennedy Center") is a Federal agency currently located at 2700 F. St., NW Washington, D.C 20566.

8.    Plaintiff Burgess is an employee of Defendant Kennedy Center and has the title "Building Manager Specialist".

9.    Defendant Jackson is an employee of Defendant Kennedy Center and has the title "Director of Security".

10.    On or about July 20, 2018, Plaintiff Burgess spoke with Ron Stewart, a co-worker who was in charge of transporting posters at the Kennedy Center and inquired as to whether it would be possible to get a Hamilton poster, since the run of the show was ending, and the posters of the show around the Kennedy Center were coming down.

11.    Ron Stewart, who was in charge of transporting posters at the Kennedy Center told Plaintiff Burgess that he had access to two Hamilton posters and that Plaintiff Burgess could have one of them.

12.    Because Ron Stewart was in charge of transporting the posters at the Kennedy Center, Plaintiff Burgess believed that Ron Stewart had insight as to the availability and/or disposition of the Hamilton posters.

13.    Plaintiff Burgess spoke with the Hamilton production personnel at the Kennedy Center and asked if the cast would be able to sign a Hamilton poster that he would place in the

designated area of the Kennedy Center where casts from shows at the Kennedy Center sign memorabilia.

14.    Plaintiff Burgess told Ron Stewart that if he (Burgess) was able to obtain a poster, he would place it in the designated area in the Kennedy Center where the casts from shows playing at the Kennedy Center normally autograph items.

15.    It is a common practice for Kennedy Center staff to place memorabilia in a designated area in the Kennedy Center for the cast of shows playing at the Kennedy Center to autograph.

16.    Ron Stewart told Plaintiff Burgess he would place two Hamilton posters, one for Plaintiff Burgess and one for Ron Stewart, in a predesignated location under the Opera House stage for Plaintiff Burgess to pick up and place in the designated area in the Kennedy Center where the casts from shows playing at the Kennedy Center normally autograph items.

17.    Ron Stewart placed two Hamilton posters in the predesignated area under the Opera House stage, one poster was for Ron Stewart and one poster was for Plaintiff Burgess.

18.    Plaintiff Burgess picked up both posters from their location under the Opera House stage and placed them in an area in the Kennedy Center where it is commonly known that cast from Kennedy Center shows autograph memorabilia.

19.    The practice of employees of the Kennedy Center getting show memorabilia signed by show cast members was known by Kennedy Center management and was either knowingly allowed or not purposely prevented.

20.     Plaintiff Burgess did not believe that placing the Hamilton posters in the designated area for cast members to sign was against Kennedy Center policy, since he witnessed the practice being done by other personnel of Defendant Kennedy Center.

21.     Sometime after Plaintiff Burgess placed the Hamilton posters in the area of the Kennedy Center where it is commonly known that cast from Kennedy Center shows autograph memorabilia, several Hamilton cast and production personnel autographed the Hamilton posters.

22.     After Plaintiff Burgess returned both Hamilton posters to the predesignated location under the Opera House stage, Ron Stewart picked up his poster and Plaintiff Burgess picked up his poster.

23.     Plaintiff Burgess did not believe there was a policy against doing what he and Ron Stewart did, nor did he believe what he did was wrong or illegal. In fact, he believed Ron Stewart had the insight as to what was going to happen to the Hamilton posters.

24.     On or about August 25, 2018, Ron Stewart informed Plaintiff Burgess that "they want the posters back." Plaintiff Burgess took this to mean the Kennedy Center management wanted the posters back.

25.     Ron Stewart informed Plaintiff Burgess that he was returning his Hamilton poster, and Plaintiff Burgess told Ron Stewart he would return his poster as well.

26.     Plaintiff Burgess returned his Hamilton poster back to the predesignated area under the Opera House stage, where he originally picked up the poster and did not give the incident a second thought.

27.     Plaintiff Burgess believes that the Hamilton poster that the Hamilton cast and production

personnel signed for him is currently in the office of a Kennedy Center executive.

28.     On September 10, 2018, Defendant Jackson verbally asked Plaintiff Burgess for a

statement regarding the Hamilton poster incident.

29.     On Tuesday, September 11, 2018 at 9:49 PM, Defendant Jackson, acting in his capacity

as an employee of Defendant Kennedy Center, sent an email to: Rodney Cherry, Supervisor,

Kennedy Center; Carlos Elias, Facilities Vice President, Kennedy Center; Roderick Haynes,

Security Manager, Kennedy Center;  and Greg Walker, Security Manager, Kennedy Center

regarding Plaintiff Burgess.

30.     The September 11, 2018 email from Defendant Jackson contained the following message:

"Carlos, Rodney, due to numerous complaints from Company Managers and Cast that have
performed at the Kennedy Center, Joe Burgess shall not be authorized backstage in the
performance of his duties unless strictly cleared by the On Duty Security Manager. Numerous
complaints have been received by performance Management of Joe Burgess requesting signed
autographs from Cast, Crew and Artist. If Joe is seen backstage for any performance, he will be
escorted immediately by security. If Joe needs access for official matters, he shall contact the On
Duty Security Manager. Please share this information with Joe Burgess immediately. Thank you
for your attention on this matter as Joe has used his official Federal position for personal gain
and possible profit for r personal advancement."     **SEE EXHIBIT 1.**

31.     Prior to this incident, Plaintiff Burgess was never informed that there were "numerous

complaints from Company Managers and Cast" about him. Plaintiff Burgess believes this is a

false and libelous statement.

32.     On Wednesday, September 12, 2018 at 10:27 am, Rodney Cherry, a Kennedy Center

employee, and Plaintiff Burgess' supervisor, sent the following email to Plaintiff Burgess:

"Joe, Refer to the correspondence below for discussion with you later today. Please drop by at
3:45 pm today."

33.     On September 12, 2018, Rodney Cherry asked Plaintiff Burgess for a statement regarding the Hamilton poster incident.

34.     On Wednesday, September 12, 2018 at 4:25 pm, Rodney Cherry sent the following email to Plaintiff Burgess:

"Joe, As per our in-person discussion a few minutes ago, you are to abide by the stipulations described in the email below from Security at all times unless otherwise noted. Thanks, Rodney A. Cherry."

   The stipulations referenced in this email were those in the email from Defendant Jackson to various Kennedy Center staff, dated September 11, 2018 and set forth in **EXHIBIT 1.**

35.     Prior to the stipulations being imposed on Plaintiff Burgess by Kennedy Center employee, Rodney Cherry, Plaintiff Burgess was not given the opportunity to tell his side of the story.

36.     On Thursday, September 13, 2018, at 11:47 am, less than 24 hours after the meeting between Rodney Cherry, Defendant Jackson and Plaintiff Burgess, Rodney Cherry sent an email to Plaintiff Burgess and Defendant Jackson asking if Plaintiff Burgess completed and submitted a "sworn" statement pursuant to the previous day's meeting.

37.     On Thursday, September 13, 2018, at 12:23 pm, in response to Kennedy Center employee Rodney Cherry's email, Defendant Jackson responded:

   "Rodney, I have not received the statement from Joe as of this past Monday as requested. This report will be forwarded without Joe's statement. Thx for following up!"

38.     On September 19, 2018, Plaintiff Burgess submitted his statement regarding the Hamilton poster incident. **SEE EXHIBIT 2**

39.     On or about September 19, 2018, Defendant Jackson submitted his report to Rodney Cherry without the inclusion of Plaintiff Burgess' statement, even though Plaintiff Burgess submitted his statement prior to Defendant Jackson submitting his report to Rodney Cherry. **SEE EXHIBIT 3.**

40.     Defendant Jackson did not submit his report with Plaintiff Burgess' written statement about the incident because Defendant Jackson wanted to ensure that a report was made on the incident WITHOUT Plaintiff Burgess' statement regarding the incident involving the Hamilton posters.

41.     Even though Plaintiff Burgess asked Defendant Jackson, and Rodney Cherry and Human Resources Personnel at the Kennedy Center for a copy of the report submitted by Defendant Jackson, Defendant Kennedy Center refused to release a copy of the report prepared by Defendant Jackson regarding the Hamilton poster incident to Plaintiff Burgess.

42.     On September 19, 2018, Defendant Jackson sent an email to Plaintiff Burgess, copying Rodney Cherry, Noel Tarquinii, Fred Gordon, with the subject "Security/Criminal Incident." **SEE EXHIBIT 4**

43.     In the email of September 19, 2018, Defendant Jackson informed Plaintiff Burgess that his statement of the Hamilton poster incident would not be made part of Defendant Jackson's report to Defendant Kennedy Center's General Counsel's Office, the Senior Vice President of Operations and the Vice President of Facilities.

44.     In the email of September 19, 2018, Defendant Jackson alleged Plaintiff Burgess stole property and informed him that the incident may be reported to the United States Park Police for further inquiry. **SEE EXHIBIT 4**

8

45.     On Monday, September 24, 2018, between 2:00 and 3:00 pm, at the Kennedy Center

Opera House Rehearsal Room #3, while participating in a security training class that included 20

to 25 Kennedy Center security guards, Defendant Jackson commented to the participants that

Plaintiff Burgess had stolen a poster at the Kennedy Center.

46.     On or about November 28, 2018, Plaintiff Burgess, along with another Kennedy Center

employee encountered Defendant Jackson in the Kennedy Center. In the presence of the

Kennedy Center employee, Defendant Jackson said to Plaintiff Burgess: "Joe, I saved you." "I

was looking out for you." "Joe, I squashed it." "I got you Joe." Plaintiff Burgess was confused

about these statements and, on December 6, 2018, he reported this incident to Kennedy Center

personnel.

47.     A few hours after Plaintiff Burgess reported the incident to Kennedy Center personnel, on

December 6, 2018, Defendant Jackson responded with an email that copied Noel Tarquinii,

Ellery Brown and Carlos Elias. In the email, Defendant Jackson accused Plaintiff Burgess of

being angry over the "stolen" Hamilton posters. Defendant Jackson went on to mischaracterize

the Hamilton poster incident to the three Kennedy Center personnel copied on the email. Finally,

he suggested that it might be a good idea for him, as Director of Security, to oversee Plaintiff

Burgess. **SEE EXHIBIT 5.**

48.     Although Plaintiff Burgess was never charged with either stealing Kennedy Center

property or receiving stolen Kennedy Center property, Defendant Jackson claimed that he did so,

to groups of several people, on at least 4 different occasions.

49.     Defendant Kennedy Center still has not released to Plaintiff Burgess a copy of the report

submitted by Defendant Jackson relating to the Hamilton poster incident.

9

50.     Defendant Kennedy Center knew or should have known of the actions of its employee, Defendant Karles Jackson, yet it refused to reprimand Defendant Jackson.

51.     As a result of the continued actions of Defendant Jackson in accusing Plaintiff Burgess of stealing Kennedy Center property, Plaintiff Burgess sought and received treatment from a licensed clinical social worker for stress, emotional distress and anxiety. **SEE EXHIBIT 6.**

52.     At all times relevant hereto, Defendant Jackson was an employee of the Defendant Kennedy Center and was acting on behalf of, in the employee and with the acquiescence of Defendant Kennedy Center.

**COUNT 1**
**DEFAMATION PER SE**
**(DEFENDANT JACKSON AND DEFENDANT KENNEDY CENTER)**

Paragraphs 1 through 52 are incorporated herein by reference.

53.     On September 11, 2018, Defendant Jackson sent an email to several employees of Defendant Kennedy Center, who were supervisors of Plaintiff Burgess alleging that Plaintiff Burgess "used his official Federal position for personal gain and possible profit for personal advancement."

54.     Defendant Jackson published the email statement on September 11, 2018 without privilege and without the consent of Plaintiff Burgess.

55.     Defendant Jackson either purposely or negligently published the email statement of September 11, 2018 in that at a minimum, he had a duty to ensure that the allegation he made of Plaintiff Burgess was true.

56.     Defendant Jackson breached his duty because at the time he made the statement, and at no time subsequent to him making the statement, there was no evidence that Plaintiff Burgess

"used his official Federal position for personal gain and possible profit for personal advancement."

57.    Defendant Jackson's September 11, 2018 email statement falsely accused Plaintiff Burgess of committing a crime.

58.    Defendant Jackson's false and defamatory statement to Plaintiff Burgess's supervisors on September 11, 2018 email caused Plaintiff Burgess to suffer anxiety, stress and emotional distress to such a degree that he had to seek medical attention.

59.    Defendant Kennedy Center knew about the actions of Defendant Jackson in publishing false and defamatory statements against Plaintiff Burgess and acquiesced to the actions of Defendant Jackson.

WHEREFORE, Plaintiff Burgess seeks compensatory damages in the amount of $125,000 and punitive damages in the amount of $125,000 against Defendants Jackson and Kennedy Center, either individually or combined, for the injures incurred by Plaintiff Burgess as a result of the actions of Defendant Jackson and Defendant Kennedy Center set forth in Count 1 of the Complaint.

## COUNT 2
## DEFAMATION PER SE
## (DEFENDANT JACKSON AND DEFENDANT KENNEDY CENTER)

Paragraphs 1 through 59 are incorporated herein by reference.

60.    On September 19, 2018, Defendant Jackson sent an email to Plaintiff Burgess and copying several employees of Defendant Kennedy Center, who were supervisors of Plaintiff Burgess with the subject heading "Security/Criminal Incident."

61.     In the email, Defendant Jackson claimed that Plaintiff Burgess' actions regarding the Hamilton posters amounted to a "criminal action," was a "reported theft," involved "stolen property" and may be reported to the United States Park Police for further inquiry.

62.     Defendant Jackson published the email statement on September 19, 2018 without privilege and without the consent of Plaintiff Burgess.

63.     Defendant Jackson either purposely or negligently published the email statement of September 19, 2018 in that at a minimum, he had a duty to ensure that the allegation he made of Plaintiff Burgess was true.

64.     Defendant Jackson breached his duty because at the time he made the statement, and at no time subsequent to him making the statement, there was no evidence that Plaintiff Burgess committed a criminal act or was involved in receiving or transporting stolen property.

65.     Defendant Jackson's September 19, 2018 email statement falsely accused Plaintiff Burgess of committing a crime.

66.     Defendant Jackson's false and defamatory statement to Plaintiff Burgess's supervisors in his September 19, 2018 email caused Plaintiff Burgess to suffer anxiety, stress and emotional distress to such a degree that he had to seek medical attention.

67.     Defendant Kennedy Center knew about the actions of Defendant Jackson in publishing false and defamatory statements against Plaintiff Burgess and acquiesced to the actions of Defendant Jackson.

WHEREFORE, Plaintiff Burgess seeks compensatory damages in the amount of $125,000 and punitive damages in the amount of $125,000 against Defendants Jackson and Kennedy Center,

either individually or combined, for the injures incurred by Plaintiff Burgess as a result of the actions of Defendant Jackson and Defendant Kennedy Center set forth in Count 2 of this Complaint.

## COUNT 3
## DEFAMATION PER SE
### (DEFENDANT JACKSON AND DEFENDANT KENNEDY CENTER)

Paragraphs 1 through 67 are incorporated herein by reference.

68.     On September 24, 2018, between 2:00 and 3:00 pm, at the Kennedy Center Opera House Rehearsal Room #3, while participating in a security training class that included 20 to 25 Kennedy Center security guards, Defendant Jackson commented to the participants that Plaintiff Burgess had stolen a poster at the Kennedy Center.

69.     Defendant Jackson published the email statement on September 19, 2018 without privilege and without the consent of Plaintiff Burgess.

70.     Defendant Jackson either purposely or negligently published the statement of September 24, 2018 in that at a minimum, he had a duty to ensure that the allegation he made of Plaintiff Burgess was true.

71.     Defendant Jackson breached his duty because at the time he made the statement, and at no time subsequent to him making the statement, there was no evidence that Plaintiff Burgess committed a criminal act or was involved in receiving or transporting stolen property.

72.     Defendant Jackson's September 24, 2018 statement falsely accused Plaintiff Burgess of committing a crime.

73.      Defendant Jackson's false and defamatory statement to Plaintiff Burgess's supervisors in his September 24, 2018 email caused Plaintiff Burgess to suffer anxiety, stress and emotional distress to such a degree that he had to seek medical attention.

74.      Defendant Kennedy Center knew about the actions of Defendant Jackson in publishing false and defamatory statements against Plaintiff Burgess and acquiesced to the actions of Defendant Jackson.

WHEREFORE, Plaintiff Burgess seeks compensatory damages in the amount of $125,000 and punitive damages in the amount of $125,000 against Defendants Jackson and Kennedy Center, either individually or combined, for the injures incurred by Plaintiff Burgess as a result of the actions of Defendant Jackson and Defendant Kennedy Center set forth in Count 3 of this Complaint.

## COUNT 4
### DEFAMATION PER SE
### (DEFENDANT JACKSON AND DEFENDANT JACKSON)

Paragraphs 1 through 74 are incorporated herein by reference.

75.      On December 6, 2018, Defendant Jackson sent an email to Plaintiff Burgess that copied Noel Tarquinii, Ellery Brown and Carlos Elias. In the email, Defendant Jackson accused Plaintiff Burgess of being angry over the "stolen" Hamilton posters. Defendant Jackson went on to mischaracterize the Hamilton poster incident to the three Kennedy Center personnel copied on the email.

76.      Defendant Jackson published the email statement on December 6, 2018 without privilege and without the consent of Plaintiff Burgess.

77.     Defendant Jackson either purposely or negligently published the statement of December 6, 2018 in that at a minimum, he had a duty to ensure that the allegation he made of Plaintiff Burgess was true.

78.     Defendant Jackson breached his duty because at the time he made the statement, and at no time subsequent to him making the statement, there was no evidence that Plaintiff Burgess committed a criminal act or was involved in receiving or transporting stolen property.

79.     Defendant Jackson's December 6, 2018 statement falsely accused Plaintiff Burgess of committing a crime.

80.     Defendant Jackson's false and defamatory statement to Plaintiff Burgess's supervisors in his December 6, 2018 email caused Plaintiff Burgess to suffer anxiety, stress and emotional distress to such a degree that he had to seek medical attention.

81.     Defendant Kennedy Center knew about the actions of Defendant Jackson in publishing false and defamatory statements against Plaintiff Burgess and acquiesced to the actions of Defendant Jackson.

WHEREFORE, Plaintiff Burgess seeks compensatory damages in the amount of $125,000 and punitive damages in the amount of $125,000 against Defendants Jackson and Kennedy Center, either individually or combined, for the injures incurred by Plaintiff Burgess as a result of the actions of Defendant Jackson and Defendant Kennedy Center set forth in Count 4 of this Complaint.

## COUNT 5: HARASSMENT
### (DEFENDANT JACKSON AND DEFENDNAT KENNEDY CENTER)

Paragraphs 1 through 81 are incorporated herein by reference.

82.     On at least four separate occasions, Defendant Jackson told various employees of Defendant Kennedy Center, that Plaintiff Burgess committed a crime, involving a theft of Hamilton posters.

83.     No evidence was presented by Defendant Jackson to prove his claim that Plaintiff Burgess committed a crime involving a theft of Hamilton posters.

84.     Defendant Jackson intentionally made at least four false statements to various employees of the Kennedy Center that Plaintiff Burgess committed a crime involving a theft of Hamilton posters.

85.     Plaintiff Burgess did not welcome, approve or agree with the statements made by Defendant Jackson to various Defendant Kennedy Center employees alleging that Plaintiff Burgess committed a crime involving a theft of Hamilton posters.

86.     A reasonable person in Plaintiff Burgess' situation would have found the actions of Defendant Jackson objectionable.

87.     Defendant Jackson is an employee of Defendant Kennedy Center.

88.     Defendant Kennedy Center knew or should have known that the actions and statements of Defendant Jackson were false in nature, yet Defendant Kennedy Center did nothing to address the pervasive harassment of Plaintiff Burgess by Defendant Jackson.

89.     Defendant Kennedy Center knew about the actions of Defendant Jackson in publishing false and defamatory statements against Plaintiff Burgess and acquiesced to the actions of Defendant Jackson.

WHEREFORE, Plaintiff Burgess seeks compensatory damages in the amount of $125,000 and punitive damages in the amount of $125,000 against Defendants Jackson and Kennedy Center, either individually or combined, for the injures incurred by Plaintiff Burgess as a result of the actions of Defendant Jackson and Defendant Kennedy Center set forth in Count 5 of this Complaint.

### COUNT 6: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (DEFENDANT JACKSON AND DEFENDANT KENNEDY CENTER)

Paragraphs 1 through 89 are incorporated herein by reference.

90.     Defendant Jackson acted in an extreme and outrageous manner when he made a claim to various employees of Defendant Kennedy Center, on at least 4 separate occasions, that Plaintiff Burgess acted in a criminal manner.

91.     Defendant Jackson made those statements despite their being no formal charges against Plaintiff Burgess.

92.     Defendant Jackson intentionally and/or recklessly made statements referring to Plaintiff Burgess as a criminal to Defendant Kennedy Center employees.

93.     Defendant Jackson knew or should have known that making statements referring to Plaintiff Burgess as a criminal to Plaintiff Burgess' co-workers and Defendant Kennedy Center employees would cause Plaintiff Burgess to suffer stress, anxiety and severe emotional trauma.

94.     As a result of Defendant Jackson's intentional and/or reckless statements to Defendant Kennedy Center employees in which he referred to Plaintiff Burgess as a criminal, Plaintiff Burgess sought medical treatment for his stress, anxiety and severe emotional trauma.

95.     Defendant Kennedy Center knew about the actions of Defendant Jackson in publishing false and defamatory statements against Plaintiff Burgess and acquiesced to the actions of Defendant Jackson.

WHEREFORE, seeks compensatory damages in the amount of $125,000 and punitive damages in the amount of $125,000 against Defendants Jackson and Kennedy Center, either individually or combined, for the injures incurred by Plaintiff Burgess as a result of the actions of Defendant Jackson and Defendant Kennedy Center set forth in Count 6 of this Complaint.

### COUNT 7: HOSTILE WORK ENVIRONMENT
### (DEFENDANT KENNEDY CENTER)

Paragraphs 1 through 95 are incorporated herein by reference.

96.     Defendant Jackson made false and defamatory statements about Plaintiff Burgess to high ranking employees of Defendant Kennedy Center.

97.     Defendant Kennedy Center knew or should have known of the false and defamatory statements made by Defendant Jackson about Plaintiff Burgess, as well as the harassment Defendant Jackson was committing against Plaintiff Burgess, yet they did not reprimand Defendant Jackson or tell him to cease his actions.

98.     By failing to take actions to stop Defendant Jackson from continuing to make false, defamatory and harassing statements about Plaintiff Burgess, Defendant Kennedy Center approved of his actions.

99.     By failing to take actions to stop Defendant Jackson from continuing to make false, defamatory and harassing statements about Plaintiff Burgess, Defendant Kennedy Center subjected Plaintiff Burgess to discrimination, intimidation, ridicule and insult.

100.    The actions of Defendant Jackson, as a Kennedy Center employee, and the inaction of Defendant Kennedy Center were sufficiently severe and/or pervasive to alter the conditions of Plaintiff Burgess' employment in that he suffered stress and anxiety wondering when Defendant Jackson would again accuse him of a criminal act.

101.    The actions of Defendant Jackson, as a Kennedy Center employee, and the inaction of Defendant Kennedy Center created an abusive working environment for Plaintiff Burgess.

102.    Defendant Kennedy Center knew about the actions of Defendant Jackson in publishing false and defamatory statements against Plaintiff Burgess harassing Plaintiff Burgess and otherwise creating a hostile work environment for Plaintiff Burgess and acquiesced to the actions of Defendant Jackson.

WHEREFORE, Plaintiff Burgess seeks compensatory damages in the amount of $125,000 and punitive damages in the amount of $125,000 against Defendants Jackson and Kennedy Center, either individually or combined, for the injures incurred by Plaintiff Burgess as a result of the actions of Defendant Jackson and Defendant Kennedy Center set forth in Count 7 of this Complaint.

## COUNT 8: RESPONDEAT SUPERIOR
## (DEFENDANT KENNEDY CENTER)

Paragraphs 1 through 102 are incorporated herein by reference.

103.    At all times relevant to this complaint, Defendant Karles Jackson was an employee of Defendant Kennedy Center.

104.    At all times relevant to this complaint, Defendant Karles Jackson was acting within the scope of his employment at the business of Defendant Kennedy Center.

105.    At all times relevant to this complaint, Defendant Karles Jackson was working under the authority and control of Defendant Kennedy Center.

106.    Any intentional or negligent acts of Defendant Karles Jackson toward Plaintiff Burgess were done so at the direction and control of Defendant Kennedy Center.

107.    Defendant Kennedy Center is responsible for any intentional or negligent acts done by its employee, Defendant Karles Jackson toward Plaintiff Burgess.

108.    Defendant Kennedy Center knew about the actions of Defendant Jackson in publishing false and defamatory statements against Plaintiff Burgess, harassing Plaintiff Burgess and otherwise creating a hostile work environment for Plaintiff Burgess and acquiesced to the actions of Defendant Jackson.

WHEREFORE, Plaintiff Burgess seeks compensatory damages in the amount of $125,000 and punitive damages in the amount of $125,000 against Defendant Kennedy Center, for the injures incurred by Plaintiff Burgess as a result of the actions of Defendant Jackson and Defendant Kennedy Center set forth in Count 8 of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the willful, purposeful and/or negligent actions of Defendants Karles Jackson and The John F. Kennedy Center for the Performing Arts, Plaintiff Joseph Burgess, III seeks compensatory damages in the amount of one million dollars ($1,000,000) and punitive damages in the amount of one million dollars ($1,000,000) plus associated costs and attorney fees against both Defendants either individually or collectively.

Dated: June 23, 2019                          Respectfully submitted,

                                              /s/ Laurence L. Socci
                                              D.C. Bar No. 241318
                                              7903 Flamingo Dr.
                                              Alexandria, VA 22306
                                              (202) 262-5843
                                              laurence.socci@dc.lawyer.us
                                              *Attorney for Plaintiff*



EXHIBIT

tabbies®

1

-----Original Message-----
From: Jackson, Karles
Sent: Tuesday, September 11, 2018 9:49 PM
To: Cherry, Rodney <RCherry@Kennedy-Center.org>; Elias, Carlos G <cgelias@Kennedy-Center.org>; Haynes, Roderick
<RHaynes@Kennedy-Center.org>; Walker, Gregg <GWalker@Kennedy-Center.org>; Jackson, Karles
<KCJackson@Kennedy-Center.org>
Subject: Joseph Burgess

Carlos, Rodney, due to numerous complaints from Company Managers and Cast that have performed at the Kennedy
Center, Joe Burgess shall not be authorized backstage in the performance of his duties unless strictly cleared by the On
Duty Security Manager. Numerous complaints have been received by performance Management of Joe Burgess
requesting signed autographs from Cast, Crew and Artist. If Joe is seen backstage for any performances, he will be
escorted from the area immediately by security. If Joe needs access for official matters, he shall contact the On Duty
Security Manager. Please share this information with Joe Burgess immediately.  Thank you for attention on this matter
as Joe has used his official Federal position for personal gain and possible profit for r personal advancement.

Sent from my iPhone

1



Dear Karles Jackson,

    As requested with the "Security Summary Statement" form, here is a copy of my statement regarding the Hamilton Posters.

Respectfully submitted,

Joseph R. Burgess, III

9/19/18

Date

CC:  Noel J. Tarquinii (Human Resources)

     Rodney Cherry (Supervisor)

     Fred Gordon (Union Representative)

     Kevin Allen (Union Representative)



EXHIBIT

2 B

### Statement of Joseph R. Burgess III

Sometime between July 15 and July 31, 2018, I asked Ron Stewart who is an usher who works in the usher services office and handles Kennedy Center posters, if there was a chance, and if no one claims it, if I could get a Hamilton poster. Ron told me that I might be able to get one since there were two. I thanked Ron and said IF I were to get a poster, I could put it in the area were performers sign posters and they might sign the poster. Ron said he could get the posters, no problem. He left them under the stage at the Opera House, so that no one else would grab them.

Thinking that there was nothing wrong with this or against Kennedy Center policy, I put both posters in the area where performers sign posters, so that the posters might get signed. Again, I never thought this was against Kennedy Center policy, since I knew other Kennedy Center employees did it.

After the posters were signed, I returned them back under the stage at the Opera House and told Ron they were back where he had left the posters, so he could get his poster.

A couple of weeks later, Ron told me "they" want the posters back. I was surprised about this because I thought they were extra posters and was under the impression I wasn't doing anything wrong. Again, I did not know what I did was wrong or against Kennedy Center policy. Ron said he returned his poster. I immediately returned the poster I had back under the stage of the Opera House, so Ron could return it to wherever he got it from. This is the last time I had anything to do with the poster.

In conclusion, I was unclear about the Kennedy Center policy regarding posters. I had no intention of using my "official Federal position for personal gain and possible profit for personal advancement." (as Karles Jackson claims.) Additionally, I returned the poster to its original location, where I picked it up, as soon as I realized there was a problem. I did not believe, at the time I asked for the poster that I was doing anything wrong. I now understand this may be a violation of Kennedy Center policy and I will not do this action again.

Respectfully submitted,

Joseph R. Burgess, III                                    9/17/18

                                                          Date

**Burgess, Joseph**

| | |
|---|---|
| **From:** | Jackson, Karles |
| **Sent:** | Thursday, September 13, 2018 12:23 PM |
| **To:** | Cherry, Rodney |
| **Cc:** | Burgess, Joseph |
| **Subject:** | Re: Sworn statement from Joe Burgess |

EXHIBIT
3

Rodney, I have not received the statement from Joe as of this past Monday as requested. This report will be forwarded without Joe's statement. Thx for following up!

Sent from my iPhone

On Sep 13, 2018, at 11:47 AM, Cherry, Rodney <RCherry@Kennedy-Center.org> wrote:

Joe / Karles,

Has the sworn statement from Joe been completed and submitted per our discussion yesterday?

Thanks,

**Rodney A. Cherry**
**Director, Facility Services**
**The John F. Kennedy Center for the Performing Arts**
**Washington DC**
**202.416.7933 (Office)**
**202.437.7912 (Cell)**

<image001.png>

1

**Burgess, Joseph**



EXHIBIT
4

| | |
|---|---|
| **From:** | Jackson, Karles |
| **Sent:** | Wednesday, September 19, 2018 12:20 PM |
| **To:** | Burgess, Joseph |
| **Cc:** | Cherry, Rodney; Tarquinii, Noel J; Gordon, Fred M; Jackson, Karles |
| **Subject:** | Security/Criminal Incident |

Mr. Burgess,

I received your personal statement (courtesy copied Noel Tarquinii, Fred Gordon and Rodney Cherry) via interoffice mail in my office in box on September 19, 2018. Please note that the statement provided by you shall be transferred to a "Security Summary Statement" since the incident in nature is considered a security/criminal matter.

This reported theft will be treated no different from any other security related incident with suspects, witnesses etc., on the security incident report. Please note that incidents reported which are security/criminal related, Human Resources, Union Representation and your immediate supervisor is not involved during an inquiry unless each are related to the incident. Once my report is finalized, I will submit the security incident report with the weekly incident reports to the General Counsel's Office, Senior Vice-President of Operations and the Vice-President of Facilities. The statement that you provided is not part of our security documentation and therefore will not be used with the incident report.

Mr. Burgess, you have been provided the opportunity to submit a security statement since September 10, 2018 on numerous occasions in which you have failed to provide as requested. Furthermore, due to the cost of the missing/stolen property, I will leave the decision of the reporting department whether or not they which to pursue this incident to the United States Park Police for further inquiry.

Respectfully,

*Karles C. Jackson Sr*
Director, Office of Safety and Security
2700 F Street Washington, DC 20566
Office: 202-416-7907
Cell: 202-437-7916
Email: kcjackson@kennedy-center.org



The
Kennedy
Center





**Burgess, Joseph**

| | |
|---|---|
| **From:** | Jackson, Karles |
| **Sent:** | Thursday, December 06, 2018 4:40 AM |
| **To:** | Burgess, Joseph |
| **Cc:** | Tarquinii, Noel J; Brown, Ellery J.; Elias, Carlos G |
| **Subject:** | Re: Encounter with Karles Jackson |



EXHIBIT
5

Joe Burgees, unfortunately you appear to be still upset with myself, Rod and Rodney. Your email remarks are not true as I was greeting you and Aaron in a friendly and expedite manner. I'm quite sure you may be still upset and angry over the stolen Hamilton posters during our inquiry and questioning of you. I have no reason to save you or anyone unless they are in danger and that's only if I can. Note that I will not communicate with you in the future as you seem to take what I say and twist it. When I said that I got you I was indicating I will try and get you an all access pin for the Honors to move freely through the mags and I will be back to speak you on same. I have been knowing you for years and you have never complained when I speak with you in same manner. Again, I understand that you are upset with the three of us, however, we were doing our jobs when it was reported by an eye witness that you entered the Coatroom to remove the three sheet Hamilton posters to obtain the Cast of Hamilton signatures for your personal gain in which you admitted during questioning. As stated I will not greet nor communicate with you unless for KC related business but I will defer to your supervisor. Carlos, Noel, on another note I would still like to consider and revisit having the Night Facilities Managers reassigned to the Office of Security. Both Security and Facilities Managers works closely together and perform some of the same duties by conducting safety inspections and ensuring cleanliness of the building. The Security Managers works during the evening shift to include myself and this will further provide management oversight for both positions during the time or until a full replacement for Dave McKinney.

Sent from my iPhone

On Dec 6, 2018, at 12:22 AM, Burgess, Joseph <JRBurgess@Kennedy-Center.org> wrote:

> I am writing to report the following incident: ON Wednesday 11-28-18, at approximately 4:45pm I (JOSEPH BURGESS) and the A/C Mechanic (AARON LONG) were inspecting temperature conditions in various locations in the Kennedy Center building. We passed by Karles Jackson at the HOS Motor Lobby entrance. HE shakes Aaron's hand then mine. Karles Jackson proceeds to say the following to me; "JOE I SAVED YOU." "I WAS LOOKING OUT FOR YOU." "JOE I SQUASHED IT." "I GOT YOU JOE." "I HAVE TO GO TO A MEETING RIGHT NOW BUT I WILL BE TALKING WITH YOU." Then he proceeded to the HOS 4-BANK elevator.
>
> I'm reporting this incident because I find this behavior extremely disturbing. I said nothing but hello when he shook my hand. I had no idea what he was talking about or referring to. His statement made no sense to me because he has nothing to "Save me from" and no reason to "Look out" for me. As we parted he said "I will talk to you later." I don't have anything to discuss with Mr. Jackson other than topics that would be work related or just a simple greeting of hello and goodbye.
> To reiterate, his behavior and discourse was disturbing and made me feel uncomfortable as if I was being targeted or isolated. What's going on here? Do I need to watch my back? Is someone coming after me?
> Once again I don't wish to have any contact with Mr. Jackson other than work related issues or a greeting.
>
> Thanks you for your attention in this matter.



LINDA BURMAN (WELLNESS CONSULTANT)

818 18TH STREET SUITE 460 NW

WASHINGTON DC 20006

**VISIT #1:  MONDAY October 1, 2018, 2:00PM – 3:00PM**

Comments:  Suggested breathe deep, focus on doing your best job, when you leave the job don't take the problems home with you,  think of someone you can talk to at the Kennedy Center who can assist in your behalf to at least address your concerns about Mr. Karles Jackson's actions toward you such as Human Resource department.

**VISIT #2:  TUESDAY October 9, 2018, 2:00PM – 3:00PM**

Comments:  Suggested breathe deep, focus on doing your best job, when you leave the job don't take the problems home with you, recognize you error.

**VISIT #3:  TUESDAY October 30, 2018, 2:00PM – 3:00PM**

Comments:  You have reasons to feel good because they may not proceed with the case sounds as though they are dropping it.  With your new supervisor you can start with a clean slate.

EXHIBIT
6 B

Pathways to Psychological Strength and Well-Being
818 18th Street NW, Suite 460
Washington, DC 20006
(202)429-5626

Linda Berman, MSW
Licensed Clinical Social Worker

Jan 8, 2019

Joseph Burgess

Individual psychotherapy @ $30.
for (co-pay amount)

11/13/18 @ 90791

12/04/18 @ 90834

Balance Due; $60. (paid in full)

Linda Berman LCSW
LIC # 50078188



Pathways to Psychological Strength and Well-Being
818 18th Street NW, Suite 460
Washington, DC 20006
(202)429-5626

Jan, 22, 2019

Linda Berman, MSW
Licensed Clinical Social Worker

Joseph Burgess

Individual psychotherapy ;
2018;    10|1
          10|9
          10|30
          11|13
          12|4
2019;    01|08
          01|22

Linda Berman, LCSW.